# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                                  )
**HARRY NEWMAN, et al.,**                         )
                                                  )
                                                  )
    **Plaintiffs,**                          )
                                                  )
    **v.**                                  )    **Civil Action No. 09-10138-DJC**
                                                  )
**EUROPEAN AERONAUTIC DEFENCE AND**               )
**SPACE COMPANY EADS N.V., et al.,**              )
                                                  )
    **Defendants.**                          )
_____)


## MEMORANDUM AND ORDER

**Casper, J.**                                                    August 1, 2012

## I.    Introduction

This case arises out of a February 2, 2007 crash of a Socata TBM 700 aircraft near the New Bedford Regional Airport in Massachusetts in which all of the aircraft's occupants, Michael J. Milot, Lauren Angstadt and Peter John Karoly, died. Plaintiffs Harry Newman, Thomas A. Wallitsch and Patricia and John Milot ("Plaintiffs"), administrators *pendente lite* of the estates of the three decedents, brought this action asserting a number of common law claims against numerous defendants. The complaint asserts claims of negligence against Lockheed Martin Services, Inc. ("Lockheed") and Midwest Air Traffic Control Services, Inc. ("Midwest"). Lockheed and Midwest have now moved for summary judgment. For the reasons set forth below, Lockheed's motion for summary judgment is GRANTED and Midwest's motion for summary judgment is DENIED.

## II.      Burden of Proof and Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56 (a).  The moving party bears the burden of showing the basis for its motion and identifying where there exists a lack of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The nonmovant "must point to 'competent evidence' and 'specific facts' to stave off summary judgment."  Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) (citation omitted); ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002).  That is, the non-movant "must come forward with evidence sufficient for a 'a fair-minded jury [to] return a verdict' in his favor."  Soto-Padro v. Public Bldgs. Auth., 675 F.3d 1, 5 (1st Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).  While the Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor," Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009), it "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" Tropigas de P.R., Inc., 637 F.3d at 56 (quoting Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001)); see Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000).

## III.     Factual Background

Unless otherwise noted, the following are the undisputed facts.[1]

---

[1]References to the docket are abbreviated as "D. __."  References to specific filings in this case are abbreviated as follows:  Lockheed's memorandum in support of its motion for summary judgment, D. 225 ("Lockheed Mem."); Lockheed's statement of undisputed material facts, D. 226 ("Lockheed SOF"); exhibits attached to the Declaration of William J. Katt in support of Lockheed's motion for summary judgment, D. 229 ("Katt. Decl., Ex. __"); Midwest's

Lockheed operated the Williamsport, Pennsylvania Flight Service Station ("FSS") that provides, among other services, pre-flight weather briefings, in-flight weather briefings and flight plan filing services.  Katt Decl., Ex. 5 (FAA Pilot/Controller Glossary).  As to pre-flight weather briefing services, a FSS specialist can provide both standard and abbreviated weather briefings. Katt. Decl., Ex. 6 (pilot briefing definition).  A standard weather briefing is a comprehensive briefing of the weather for a flight and includes adverse conditions, whether a VFR flight is not recommended, a synopsis of the weather, current conditions, en route forecast, winds aloft, and Notices to Airmen ("NOTAM") information.  Id.  A NOTAM is a "notice containing information (not known sufficiently in advance to publicize by other means) concerning the establishment, condition or change in any component (facility, service, or procedure of, or hazard in the National Airspace System) the timely knowledge of which is essential to personnel concerned with flight operations."  Katt Decl., Ex. 7 (FAA Pilot/Controller Glossary at PCG N –3-4).  An abbreviated

---

memorandum of law in support of its motion for summary judgment, D. 233 ("Midwest Mem."); Midwest's statement of undisputed material facts, D. 231 ("Midwest SOF"); exhibits attached to the declaration of Karen M. Berberich in support of Midwest's motion for summary judgment, D. 232 ("Berberich Decl., Ex. __"); Plaintiffs' memorandum of law in opposition to Lockheed's motion for summary judgment, D. 248 ("Pl. Opp. I"); Plaintiffs' statement of undisputed material facts in support of its opposition to Lockheed's motion for summary judgment, D. 249 ("Pl. SOF I"); Lockheed's response to Plaintiffs' statement of undisputed material facts, D. 256 ("Lockheed Resp. to Pl. SOF I"); Plaintiffs' memorandum of law in opposition to Midwest's motion for summary judgment, D. 246 ("Pl. Opp. II"); Plaintiffs' statement of undisputed material facts in support of their opposition to Midwest's motion for summary judgment, D. 247 ("Pl. SOF II");  Midwest's Response to Plaintiffs' statement of undisputed material facts, D. 251 ("Midwest Resp. to Pl. SOF II"); exhibits attached to the second Declaration of Karen M. Berberich in support of Midwest's motion for summary judgment, D. 252 ("Berberich Second Decl., Ex. __"); Midwest's reply memorandum to Plaintiffs' opposition, D. 253 ("Midwest Reply"); Lockheed's reply memorandum to Plaintiffs' opposition, D. 254 ("Lockheed Reply"); exhibits attached to the second Declaration of William J. Katt in support of Lockheed's motion for summary judgment, D. 255 ("Katt Second Decl., Ex. __"); and the transcript of motion hearing held on June 25, 2012 ("6/25/2012 Hearing Tr. at __").

briefing is "provided when a pilot requests information to supplement mass disseminated data; update a previous briefing; or when the pilot requests that the briefing be limited to specific information." Katt Decl., Ex. 6.  Although "[t]he primary source of preflight weather briefings is an individual briefing obtained" from a FSS briefer, pilots may obtain weather information pertaining to any flight from a variety of other sources such as private weather reporting services.  Katt Decl., Ex. 8 (FAA Aeronautical Information Manual Sections 7-1-2(c), 7-1-3).

At 9:25 a.m. on the day of the crash, Michael Milot, the pilot in command of the fatal flight, contacted the Williamsport FSS.  Pl. SOF I ¶ 9; Lockheed Resp. to Pl. SOF I ¶ 9.  During that call, the FSS briefer, employed by Lockheed,  asked Milot whether he wanted "weather and aeronautical" information.  Id.  Milot indicated he would and the briefer proceeded to give Milot a standard briefing.  Id.

Later that day at 4:01 p.m., Milot contacted the Williamsport FSS again for weather briefing and to file two Instrument Flight Rules ("IFR") flight plans.  Katt. Decl., Ex. 1 (National Transportation Safety Board Factual Report ("NTSB Report")).[2]  The two IFR flight plans were for a flight from Boston to Bedford, Massachusetts, with a proposed departure time of 5:00 p.m. and a second flight from Bedford to Allentown, Pennsylvania, with a proposed departure time of 8:00 p.m.  Katt Decl., Ex. 9 (LMSI Accident Package Transcript of Voice Recording - 4:01 p.m. call, LMSI 0084-86).  Milot spoke with Michael Walker, one of Lockheed's FSS Williamsport briefers.  Katt Decl., Ex. 13 (Department of Transportation FAA, personnel statement).  Milot requested and

---

[2]Instrument Flight Rules govern the procedures for conducting an instrument flight or flight by reference to the instruments within the aircraft (as opposed to by reference to visual conditions or cues outside the aircraft, as with Visual Flight Rules ("VFR")).  Katt Decl., Ex. 10 (FAA Pilot/Controller Glossary at PCG I-4, PCG V-3).  To conduct an IFR flight, a pilot must file an IFR flight plan.  Federal Aviation Regulation 91.173.  See 14 C.F.R. § 91.173.

received a standard weather briefing from Walker for both flights as well as NOTAM information

for Boston and Bedford.   Katt Decl., Ex. 9 (Lockheed Accident Package Transcript of Voice

Recording - 4:01 p.m. call at LMSI 0086-91).   In connection with this briefing, Walker informed

Milot of an AIRMET[3] for IFR conditions throughout the Boston area with ceilings less than 1,000'

and visibilities less than three miles.   Katt. Decl., Ex. 14 (FAA Pilot/Controller Glossary at PCG A-

7).   Walker further informed Milot of the current conditions at the time at the Boston and Bedford

airports, the forecast for Boston, and that the radar showed a large band of precipitation moving into

the area.   Katt Decl., Ex. 9 (Lockheed Accident Package Transcript of Voice Recording - 4:01 p.m.

at LMSI 0086-91).

About an hour later at 5:10 p.m., Milot contacted the Williamsport FSS again to change the

two previously filed flight plans.   Walker Dep., Ex. 50, Ex. 15 to Katt Decl.   He spoke again with

Walker.   Walker Dep., Ex. 51, Ex. 13 to Katt Decl.   Milot indicated that he needed to change the

destination for the first flight and the departure point for the second flight from Bedford to New

Bedford.   Katt Decl., Ex. 15 (Lockheed Accident Package Transcript of Voice Recording - 5:10 p.m.

phone call at LMSI 0086-91).   During this call, Milot neither requested nor received a weather

briefing or any NOTAM information related to these flight plans.   Id.   At the time, a NOTAM was

in effect at New Bedford to alert pilots that the approach lighting system to runway 5, a series of

lights at the end of a runway designed to assist pilots on instrument approaches to the airport, was

not in operation.   Katt Decl., Ex. 1 (NTSB Report at 1b).   These lights had been out of operation

---

[3]AIRMETs are "[i]n-flight weather advisories issued only to amend the area forecast concerning weather phenomena which are of operational interest to all aircraft and potentially hazardous to aircraft having limited capability because of lack of equipment, instrumentation, or pilot qualifications."   Katt. Decl., Ex. 14 (FAA Pilot/Controller Glossary at PCG A-7).

since August 2006.  Katt Decl., Ex. 16 (2/9/2007 online news article).

At approximately 7:17 p.m., approximately two hours after Milot's last contact with Walker, the aircraft departed Boston.  Katt Decl., Ex. 1 (NTSB Record at 1).  The Boston Control Tower cleared the pilots for takeoff.  Berberich Decl., Ex. T (personnel statements of controllers at Midwest 00029-37); Ex. W (transcript of recordings between accident aircraft and Providence Tower).  The Providence Approach Controller gave directions to the pilot for the appropriate approach course to New Bedford and cleared it for the ILS approach to runway 5 at New Bedford.  Katt Decl., Ex. 1 (NTSB Record at 2).  The New Bedford Tower began providing Air Traffic Control services once the Providence Approach Controller turned the aircraft over to it and the aircraft was on the Tower's frequency.  Berberich Decl., Ex. R (transcript of recordings between accident aircraft and New Bedford Tower); Ex. H (Parsons Dep. at 28).  When contacted by the pilots, the New Bedford Tower cleared the pilots to land.  Berberich Decl., Ex. U (Pilot/Controller Glossary defining clearing a landing).  The pilots advised the Tower shortly thereafter, at approximately 7:37 p.m., that the aircraft was "going missed," a term used to indicate that pilots were aborting that approach.  Katt Decl., Ex. 1 (NTSB Report at 1a); Pl. SOF II, Ex. V (recording of transcript between New Bedford Tower and accident aircraft at Midwest 000024).  The aircraft crashed shortly thereafter, fatally injuring all three on board.  Katt Decl., Ex. 1 (NTSB Report at 1).

## IV.    Procedural History

Plaintiffs initiated this lawsuit on January 29, 2009, asserting claims for strict liability (Count I), negligence (Counts II, VI - IX), breach of warranty (Count III), punitive damages (Count IV) and breach of contract (Count V), against numerous defendants.  Plaintiffs assert negligence claims against Lockheed and Midwest (Counts VII and VIII, respectively).  Since the filing of Plaintiffs'

first amended complaint on March 4, 2009 (which added negligence claims against certain Defendants in Count IX) (D. 4) and their second amended complaint on March 16, 2010 (which added negligence claims against additional Defendants (Count X) and against the United States Federal Aviation Administration ("FAA") (Count XI)) (D. 128), numerous defendants have been dismissed. The only remaining Defendants in this matter are Lockheed, Midwest and the United States. Defendants Lockheed and Midwest have now moved for summary judgment. After a hearing on both motions on June 25, 2012, the Court took the matter under advisement.

## V. Discussion

### A. Lockheed's Motion for Summary Judgment

Plaintiffs claim that Lockheed was negligent in failing to provide appropriate pre-flight briefing or NOTAM information to Milot at the time of his last contact with the Williamsport FSS prior to departing Boston. SAC at ¶¶ 127-33. Plaintiffs further claim that as a result of such failure, the aircraft crashed. Id. at ¶ 133. To prevail on a negligence claim, a plaintiff must establish that "(1) the defendant owed the plaintiff a duty of reasonable care; (2) the defendant breached this duty; (3) damage to the plaintiff resulted; and (4) the breach of the duty caused this damage." Brown v. United States, 557 F.3d 1, 3 (1st Cir. 2009) (citing Jupin v. Kask, 447 Mass. 141, 146 (2006)). Although, whether a plaintiff has satisfied the last three elements is typically a question for the jury, id., whether a duty of care exists is a question of law appropriately decided on summary judgment. Afarian v. Mass. Elec. Co., 449 Mass. 257, 261 (2007).

### 1. Duty

As a general matter, a pilot and FAA personnel including FSS specialists have "concurrent duties of care for the protection of the aircraft and its occupants." Webb. v United States, 840 F.

Supp. 1484, 1511 (D. Utah 1994), and cases cited; see Bieberle v. United States, 255 F. Supp. 2d 1190, 1201 (D. Kan. 2003).  The scope of that duty in a given situation "may depend on various sources, including FAA orders, federal regulations, and norms and customs of the air traffic control system."  Bieberle, 255 F. Supp. 2d at 1201.  "Relevant sources include . . . the Flight Services Manual (FAA Order 7110.10), and the Aeronautical Information Manual."  Id. (citing cases).  Plaintiffs contend that Walker had a duty to inquire of Milot and provide weather information and NOTAM information for New Bedford to him when Milot called at 5:10 p.m. to revise his flight to New Bedford under the following three theories:  (1) that FAA Order 7110.10S obligated Walker to inquire; (2) that Walker voluntary assumed a duty to inquire; or (3) that Walker created a foreseeable risk of harm when he did not provide Milot with weather and NOTAM information.  Pl. Opp. I at 4-10.

> ### a.  Whether Walker Had a Duty Under FAA Order 7110.10S to Inform Milot of the Adverse Weather Conditions at New Bedford and NOTAM Information Even When Milot Did Not Request It

FAA Order 7110.10S, the order setting forth the procedures to be used by a FSS specialist in conducting weather briefings and filing flight plans, Pl. SOF I, Ex. B (FAA Order 7110.10S), requires weather briefers to ask a pilot filing a flight plan if he requires the latest adverse conditions along the route.  Section 3-2-2(e) provides:  "When a pilot requests to file a flight plan only, ask if he/she requires the latest information on adverse conditions along the route of flight.  If he/she responds 'yes':  1. Provide information on adverse conditions pertinent to the intended route of flight.  2.  Provide details on these conditions in accordance with subpara 3-2-1b1 [Adverse Conditions]."  FAA Order 71110.10S.  Adverse conditions include "low level wind shear, thunderstorms, reported icing, frontal zones along the route of flight, airport closures, air traffic

delays, etc." Id. at § 3-2-1(b)(1).

Lockheed argues that Walker had no affirmative duty under FAA Order 7110.10S to ask Milot if he wanted or needed a pre-flight weather briefing or NOTAM information during Milot's 5:10 p.m. call.   It is undisputed that Milot neither requested a weather briefing nor NOTAM information during the 5:10 p.m. call and that at that time, adverse conditions existed on the flight route from Boston to New Bedford that included an AIRMET for IFR conditions at New Bedford and a NOTAM that the approach lights were inoperative at the New Bedford Airport.  Pl. SOF I ¶ 18; Lockheed Resp. to Pl. SOF I ¶ 18.  It is also undisputed that Walker did not check the weather at New Bedford at any time while he was speaking with Milot and changing the flight plan to reflect the new destination, Pl. SOF I ¶ 26; Lockheed Resp. to Pl. SOF I ¶ 26, and that Walker failed to provide Milot with the current or forecast weather at New Bedford or the NOTAM for the inoperative approach lights to runway 5 at New Bedford, the runway used for the subject flight.  Pl. SOF I ¶ 19; Lockheed Resp. to Pl. SOF I ¶ 19.

The issue, therefore, is whether Walker owed a duty to inquire of Milot whether he needed weather or NOTAM information for New Bedford at the time of his call.  The plain language of FAA Order 7110.10S requiring FSS briefers to ask a pilot if he would like adverse conditions information is triggered only when a pilot calls to file a new flight plan.  However, the parties disagree as to whether Milot's 5:10 p.m. call to change the destination of the first flight to New Bedford and the point of departure for the second flight to New Bedford constituted the filing of a new flight plan to render the requirements under FAA Order 7110.10S applicable or whether Milot simply called to amend a previously filed flight plan, making the FAA Order's requirements to inquire of the pilot inapplicable.

To support their contention that Milot's call to change the flight information constituted a new flight plan as opposed to amending his previously filed flight plan, Plaintiffs rely on the deposition testimony of Lockheed expert Patrick Terry.  Pl. Opp. I at 6.  However, Terry testified that when a pilot calls to change a destination for a flight, such change does not constitute a new flight plan.  Terry testified as follows:

> Q   I am not asking what Milot called about.  I'm asking your understanding if you call - if somebody calls up and amends a destination, that doesn't constitute a new flight plan?
>
> A   No. That's an amended flight plan.

Terry Dep. 74:22-75:19, Katt Second Decl., Ex. 3.  Plaintiffs' own expert, Richard Burgess, testified to the same effect.  When asked whether Milot was filing a flight plan during his 5:10 p.m. call, Burgess stated: "No, he was changing the destination."  Burgess Dep. 141:4-7, Katt. Decl., Ex. 17.  Burgess further testified that FAA Order 7110.10S does not specifically say that when a pilot calls for a destination change, he must be asked whether he would like the latest information on adverse conditions.  Burgess Dep. 141:21-142:5, Katt. Decl., Ex. 17.  Plaintiffs point to no evidence in the record to support that Milot was filing a new flight plan during his second phone call to Williamsport FSS.  Rather, the transcript of the 5:10 p.m. conversation between Walker and Milot as well as the testimony of Burgess and Terry indicate that Milot was not filing a new flight plan at that time, but was, instead, amending the flight plan he had filed earlier with Walker.  The record is devoid of any evidence to suggest Milot wanted a weather briefing or NOTAM information at the time of the call or that Milot could not have obtained that information by requesting it from Walker.  Thus, the FAA Order 7110.10S did not give rise to a duty for Walker to ask Milot if he would like information concerning adverse conditions for an amended flight plan.

> **b.     Whether Walker Voluntarily Assumed the Duty to Inquire Further of Milot During the 5:10 p.m. call**

Plaintiffs next argue that even if FAA Order 7110.10S did not give rise to such a duty, Walker and Lockheed voluntarily assumed such duty.  Pl. Opp. at 7.  "'A basic principle of negligence law is that ordinarily everyone has a duty to refrain from affirmative acts that unreasonably expose others to a risk of harm.'"  Mass. Asset Fin. Corp. v. Harter, Secrest & Emery, LLP, 430 F.3d 59, 61 (1st Cir. 2005) (quoting Tobin v. Norwood Country Club, Inc., 422 Mass. 126, 142 (1996)).  While a person generally "does not have a duty to take affirmative action," Commonwealth v. Levesque, 436 Mass. 443, 449 (2002), if he voluntarily assumes a duty, he must perform that duty with due care.  Mullins v. Pine Manor College, 389 Mass. 47, 52 (1983).  "For a duty voluntarily undertaken, the standard of due care depends upon the nature of the action."  Mass. Asset Fin. Corp., 430 F.3d at 62.

The duty Plaintiffs argue Walker assumed was the duty to inquire whether Milot needed weather or NOTAM information (or provide this information without a request) and that he failed to perform that duty with due care.  For Plaintiffs to prevail on this theory, they must show that Walker actually began to undertake this duty or acted in a manner consistent with it.  It is when a person "voluntarily assumes a duty or undertakes to render services to another that should have been seen as necessary for her protection, that person may be liable for harm caused because of the negligent performance of his undertaking."  Thorson v. Mandell, 402 Mass. 744, 748 (1988).  Here, the undisputed evidence, however, demonstrates that Walker did not begin to undertake any duty to inquire whether Milot needed weather or NOTAM information during the 5:10 p.m. call.  It is undisputed that Milot called at 5:10 p.m. only to change the destination of the first flight and the point of departure for the second flight.  At that point, Walker's obligation was to comply with

Milot's request and it is undisputed that he did so.  Milot did not request any other information

during the call, let alone weather briefing or NOTAM information. A person cannot be held liable

under a voluntary assumption of duty theory when he takes no action suggesting that is the case; he

must begin to undertake the action and fail to fulfill the duty with due care for liability to attach.

Cottam v. CVS Pharmacy, 436 Mass. 316, 323 (2002) is instructive on this point.  There,

CVS provided a customer with a list of some, but not all, of the potential side effects of his

medication.  CVS argued that it did not voluntarily assume a duty to warn him of all potential side

effects of the drug.  Id.  In rejecting CVS' argument that it had no duty to warn of all side effects,

the Supreme Judicial Court found that while a customer could not reasonably construe a single label

containing one specific warning as a "comprehensive list of all side effects, contraindications, or

potential adverse interactions . . . where [ ] a pharmacy provides a more detailed list of warnings,

or, by way of advertising, promises to provide customers with information, it may thereby undertake

a duty to provide complete warnings and information." Id. at 326.  This case presents an undisputed

set of facts showing that Walker did nothing from which it could be suggested he assumed a duty

to provide certain information but failed to do so with due care.[4]  Walker did not voluntarily assume

a duty to either provide weather or NOTAM information to Milot or inquire as to whether he needed

such information.[5]

---

[4]Although Plaintiffs argue that Lockheed assumed a duty to inquire of Milot, relying upon two excerpts from Lockheed's website stating that its briefers will provide "the latest adverse conditions . . . and NOTAMS . . . even if you don't ask," Pl. SOF I, Ex. N, and that its briefers "go above and beyond to protect you, to give you as much information as they believe necessary to help you make an educated GO/NO-GO decision," Pl. SOF I, Ex. M, the record indicates that these excerpts were neither posted nor operative at the time of the crash.  See Pl. SOF I, Ex. M (posted 5/11/2012); Ex. N (posted 1/17/2008).

[5]To the extent Plaintiffs argue that Walker's actual practice meant that he had assumed a legal duty, Pl. Opp. I at 8-9, Walker testified that during the 5:10 p.m. call with Milot, he was

        **c.**     **No Common Law Duty To Inquire Based on Existing Social Values and Customs**

Lastly, Plaintiffs argue that even if FAA Order 7110.10S did not expressly require Walker to provide Milot with a weather briefing for New Bedford, Walker had a common law duty to inform Milot, without being asked, of the weather conditions and the NOTAM data regarding the inoperative approach lights at the New Bedford airport.  Pl. Opp. at 10-12, D. 248.    Under Massachusetts law, a precondition to the "duty to exercise reasonable care to avoid physical harm to others . . . . is, of course, that the risk of harm to another be recognizable or foreseeable to the actor." Jupin, 447 Mass. at 157.  As Plaintiffs acknowledge, government and FAA regulations regulate the conduct of weather briefers and provisions such as FAA Order 7110.10S outline their specific duties and responsibilities.  Pl. Opp. at 11, D. 248.  FAA regulations also similarly require pilots to obtain all relevant flight information before taking off, including weather and NOTAM information.  See 14 C.F.R. § 91.103(a); Tinkler v. United States by F.A.A., 700 F. Supp. 1067, 1075 (D. Kan. 1988), aff'd, 982 F.2d 1456 (10th Cir. 1992); Webb, 840 F. Supp. at 1511-12.  "The FAA through its agents, flight service specialists, has a duty to give a pilot information that the pilot requests . . . [t]o fulfill this duty, the FAA must give a direct response to a pilot's request." Tinkler, 700 F. Supp. at 1074 (internal citation omitted). Given these requirements, it is not foreseeable that the pilots would begin a flight without the information they needed to undertake the flight safely and that they would depart nearly two and a half hours after Milot's last phone call at 5:10 p.m. with Walker without knowing the weather and airport information for New Bedford.  Here, where Milot neither filed a new flight plan nor requested weather briefing (to render FAA Order 7110.10S

---

following the federal regulations in effect at that time, specifically FAA Order 7110.10S. Walker Dep. 14:1-5; 20:25-21:8, Lockheed Resp. to Pl. SOF I, Ex. 22.

applicable) Walker's duty was to provide information Milot requested.  See Tinkler, 700 F. Supp. at 1074 (finding that the FSS briefer breached his duty to respond to pilot's request for a weather briefing but that pilot's negligence in failing to attempt to contact the available sources of weather information when he witnessed deterioration of weather conditions and failing to abide by minimum safe altitude requirements was a superseding cause of the crash).  The undisputed record shows that Walker complied with Milot's request to amend his previously filed flight plan.  Walker was under no legal duty to provide any further information. See Economu v. United States, 1992 WL 1258526, at *6-8 (S.D. Ohio Aug. 26, 1992) (noting that while briefer had no duty "to provide a standard weather briefing, in the absence of an appropriate request," the briefer owed the pilot a duty to inform him of any hazardous conditions since he was filing a new flight plan and finding that because the briefer had no available weather information indicating the proposed flight was unsafe, the briefer did not breach his duty).

## 2.    Causation

However, even assuming that Walker owed Milot a legal duty to provide a weather briefing and NOTAM information under the circumstances of this case and breached that duty, which the Court finds he did not, Plaintiffs have failed to present sufficient evidence from which a reasonable fact finder could conclude that such breach caused the crash or that the crash was foreseeable.  In Massachusetts, Plaintiffs must adduce sufficient evidence to show: (1) proximate causation,  that "the loss was a foreseeable consequence of the defendant's negligence" and (2) actual causation. Jorgensen v. Mass. Port Auth., 905 F.2d 515, 522-23 (1st Cir. 1990).  The actual causation inquiry consists of two elements: first, that "the defendant's negligence was a but-for cause of the loss" and second, "that the defendant's conduct was a substantial legal factor in bringing about the alleged

harm to the plaintiff." Id. at 524 (finding that even if reputation damages were recoverable in a negligence case, plaintiffs had not presented sufficient evidence to show the existence of a causal connection between the defendant's negligent maintenance of a runway and the alleged harm to plaintiffs' reputations as pilots). Lockheed argues that Plaintiffs have not presented sufficient evidence to satisfy the requisite elements of causation to survive summary judgment. Lockheed Mem. at 22-23.

The Court turns first to proximate causation. While proximate causation is typically a question for the jury, see, e.g., Solimene v. B. Grauel & Co., 399 Mass. 790, 794 (1987), Plaintiffs have failed to proffer sufficient evidence from which a reasonable fact finder could conclude that it was foreseeable that Walker's failure to provide a pre-flight weather briefing more than two hours prior to the aircraft's departure would have resulted in a crash. As discussed above, in addition to the obligations FAA regulations impose on FSS briefers like Walker, pilots are required to ensure that they have sufficient weather information before undertaking a particular flight. See 14 C.F.R. § 91.103; Tinkler, 700 F. Supp. at 1075. There is no evidence to suggest that Milot wanted weather or NOTAM information from Walker at the time of his call two hours before the aircraft's departure, that Milot could not have received weather or NOTAM information from another source before the departure or during the flight or that having such information would have changed Milot's decision to depart Boston that evening.

This case is similar to Davis v. United States, 643 F. Supp. 67 (N.D. Ill. 1986) aff'd, 824 F.2d 549 (7th Cir. 1987). There, in noting that weather briefers are under no duty to foresee the unlawful or negligent acts of pilots, the Court found that the weather briefing provided to the pilot was not a proximate cause of the later crash and that the "burden was on [the pilot], not [the briefer],

to assure that [he] had the most recent weather information available from Rockford flight service station or other weather source before undertaking the proposed flight." Id. at 77. Although the pilot in Davis was operating a VFR flight and ignored the adverse weather conditions around him immediately before takeoff, the district court concluded that the pilot had a duty to assure himself that the weather conditions were sufficient to permit the VFR flight and had the opportunity to obtain current weather information just prior to takeoff. Id. at 78. In affirming the district court's ruling, the Seventh Circuit noted that the briefer could not be held negligent for the pilot's "unforeseen negligence in failing to take proper safety precautions" when he relied on "an hour old report once arriving at [the] airport under deteriorating conditions." Davis, 824 F.2d at 555-56. In this case, there is simply insufficient evidence from which a reasonable fact finder could conclude that the crash was a foreseeable consequence of Walker's failure to provide Milot, who was required to obtain information relevant to the flight, with weather or NOTAM information more than two hours before the aircraft's departure.

Plaintiffs have also failed to present sufficient evidence showing "the existence of a causal connection between the defendant's actions (or inactions) and the injury sustained by the plaintiff[s]." Jorgensen, 905 F.2d at 524 (citing cases). "This connection cannot be left to the jury's conjecture or speculation." Id. Showing "the mere possibility of a causal connection" is insufficient; Plaintiffs must show the "probability of such a connection." Id. "This requirement of demonstrating a connection between the defendant's conduct and the plaintiff's alleged injury is also described as the requirement of showing actual causation, or causation-in-fact. Plaintiffs must show that defendant's conduct was a but-for cause of their injury . . . and that defendant's conduct was a 'substantial legal factor' in bringing about the alleged harm to the plaintiff." Id. (internal quotation

marks and citations omitted).

Plaintiffs fail to point to evidence to support a reasonable inference that Walker's conduct was a but-for cause or substantial factor in causing the crash.  There is no evidence that such information would have changed Milot's decision whether to depart from Boston that evening. Indeed, Plaintiffs' expert, Stimpson, could not say "they wouldn't [have] take[n] off" if the pilots had received weather information when Milot called and changed the destination.  Stimpson Dep. 254:22-255:2, D.229-18.  Stimpson testified that "it was a factor in the accident as we know it.  In other words, I didn't take out what if."  Stimpson Dep. 255:3-5, D.229-18.  Burgess could not say whether "if [the pilots] had learned that their destination had IFR conditions instead of VFR conditions that they wouldn't have taken off on their IFR flight."  Burgess Dep. 159:11-16, D. 229-17.  Plaintiffs offer no evidence of what information the pilots acquired (or did not acquire) in the two and a half hours between the time of Milot's last call to Walker and the aircraft's departure.

Moreover, the Plaintiffs' experts could not testify that any alleged failure by Walker to inquire whether Milot needed weather or NOTAM information was a substantial factor in causing the accident.  Burgess testified that a lack of weather information was a possible cause of the crash, as it "certainly could have contributed to it."  Burgess Dep. 152:5-21; 160:23-162:14, D. 229-17. Stimpson declined to opine that Walker's failure to inquire of Milot was a substantial factor; he testified it was "a factor" and that he could not "assign it as a substantial factor."  Stimpson Dep. 252:24-253:15; 255:11-256:7; 257:5-7, D. 229-18.  Plaintiffs' experts' testimony that Walker's actions was a possible cause or a factor, but not a substantial factor, in the accident is insufficient to create a genuine dispute of material fact regarding actual causation where the phone call between Walker and Milot occurred nearly two and half hours prior to the aircraft's departure from Boston.

17

See, e.g., Goffredo v. Mercedes-Benz Truck Co., Inc., 402 Mass. 97, 101-103 (1988) (upholding dismissal on directed verdict because plaintiff's expert's testimony that a loose door latch "'could have' caused the door to open accidentally" was insufficient to establish that the defect caused plaintiff harm since the expert was "unable to state his opinion in terms of probabilities and not possibilities").[6]

To the extent Plaintiffs argue that their experts need not opine on what the pilots would or would not have done if they had been informed of the conditions at New Bedford and that a jury can reasonably infer even without expert testimony that a pilot might have altered his flight plan or altered the manner in which he flew the aircraft had he been provided that information, Plaintiffs present no evidence to support such inference to warrant denial of summary judgment.   See, e.g., Bieberle, 255 F.Supp.2d at 1202 (granting summary judgment for FSS briefer where she provided a pilot with an abbreviated rather than a standard briefing, which would have included a report of foggy conditions, because Plaintiffs offered no evidence and the record did not reasonably suggest that reporting such conditions "would have influenced or affected [the pilot's] operation of the aircraft").

---

[6]Plaintiffs' reliance on Ingham v. E. Air Lines, Inc., 373 F.2d 227 (2d Cir. 1967) and Himmler v. United States, 474 F.Supp. 914 (E.D. Pa. 1979) is misplaced since, in those cases, there was evidence of a causal link between the alleged breach of duty and the crash.  Both cases involved the actions of air trafficking controllers giving (or failing to give) information and direction to pilots, in real time, in approaches that resulted in crashes.  Ingham, 373 F.2d at 236-37 (affirming the district court's denial of summary judgment where a traffic controller failed to report changing adverse weather conditions to the pilots of a commercial airliner on its approach to the airport and explaining that the pilot might have decided to divert to another location rather than attempt a landing at the designated destination if the controller had notified the crew of the changing weather conditions during the flight); Himmler, 474 F. Supp. at 918 (finding and concluding, among other things, that "the inactions of the controller in failing to communicate to the pilot on a frequent basis, in failing to draw the pilot's attention to his instruments . . . were a contributing cause to spatial disorientation").

Accordingly, because there is no genuine issue of material fact as to duty and causation and, accordingly, "no rational view of the evidence would warrant a finding of negligence," <u>Glick v. Prince Italian Foods of Saugus, Inc.</u>, 25 Mass. App. Ct. 901, 902 (1987), Lockheed's motion for summary judgment is GRANTED.

### B. Midwest's Motion for Summary Judgment

Midwest's motion for summary judgment stands in a different posture than that of Lockheed. Unlike the communications between Milot and FSS briefer Walker two and a half hours prior to Plaintiffs' departure from Boston, air traffic controller Parsons, employed by Midwest, communicated with the pilots while the aircraft was in flight approaching the runway. Plaintiffs claim that Midwest was negligent through the actions of its tower controller, Parsons, and his alleged failure during the approach to provide or ensure that the pilots had information concerning New Bedford weather and airport conditions, such as visibility and inoperative approach lights, and the failure to monitor the aircraft and its speed appropriately as it approached the runway.

Midwest does not contend it had no duty to provide the information Plaintiffs claim was either inaccurately reported or not provided at all; Midwest's challenges focus on causation. <u>See</u> Midwest Mem. at 9; 6/25/2012 Hearing Tr. at 39. Specifically, Midwest argues that even assuming the allegations concerning the information the air traffic controllers failed to provide were true, Midwest Mem. at 9, summary judgment is nonetheless warranted since this information would have had no impact on the execution of a missed approach by the pilots. Midwest argues that it would have only had an effect on the ability to land the aircraft and because a missed approach is a routine maneuver for a pilot, it was not foreseeable that a pilot would lose control of the aircraft during such maneuver and crash fatally injuring all occupants. Midwest's argument is unpersuasive.

19

Applying the standard for negligence claims, Plaintiffs "need not show that the particular harm that resulted was foreseeable to the defendant;" rather, they "must show that a harm of the same general character was a foreseeable result of the defendant's conduct." Jorgensen, 905 F.2d at 523, and cases cited; Jupin, 447 Mass. at 150 n.8. Thus, the question is whether it was foreseeable to Midwest's air traffic controller that an airplane would crash and fatally injure all of those on board due the controller's actions or inactions, not as Midwest contends, that the pilots would not have been able to successfully execute a missed approach and crash as a result. Midwest cites no authority, and the Court can find none, for the proposition that the air traffic controller's duty of exercising reasonable care does not extend beyond a pilot's attempt to land the aircraft to the execution of a missed approach.[7]

Based on the present record, it cannot be determined as a matter of law whether it was reasonably foreseeable to the air traffic controller that the aircraft would be unable to land and crash due to his failure to monitor the aircraft appropriately or provide the pilots of the aircraft with accurate relevant information such as the inoperative approach lights and visibility at the New Bedford Airport, among other information - allegations Midwest accepts for the purposes of the present motion.[8] Given the alleged omissions and misinformation concerning the pilots' attempt to

---

[7]Even accepting that a missed approach is a routine maneuver executed by pilots, a missed approach still requires "precision coordination by the crew, and the success or failure of the operation, when the plane was at a very low altitude, depend[s] upon just how rapidly the crew reacted." Ingham, 373 F.2d at 237. The crew cannot "be lulled into a false sense of security." Id. That is, even if a missed approach is a routine maneuver, the execution nonetheless depends on the factual circumstances presented in a particular case.

[8]Nor can it be said that the pilots' alleged negligence in failing to execute the missed approach constituted an intervening or superseding cause of the crash. See Midwest Mem. at 25-29. For the "new event [to be] deemed . . . the proximate cause of the injury and relieve[ ] a defendant of liability," the intervening event must be "so extraordinary that it could not reasonably have been foreseen," Delaney v. Reynolds, 63 Mass. App. Ct. 239, 242 (2005), which

land at the New Bedford Airport and the alleged failure to monitor the aircraft properly as it approached the runway, the Court cannot conclude, on the record before it as a matter of law, whether it was reasonably foreseeable to the air traffic controller that his alleged failure would affect not only whether and when the pilots would land the airplane, but also their decision whether to execute a missed approach at the time and in the manner they did so.  Similarly, whether the crash was a probable consequence of the controller's alleged failure to provide certain information to the pilots as the aircraft was approaching the runway and whether such alleged failure was a but-for cause or substantial factor in causing the accident cannot be resolved on this record and will be determined by the factfinder.  See, e.g., Ingham, 373 F.2d at 237 (affirming district court's conclusion that had "the crew kn[own] of current conditions, they might have maneuvered the plan differently, and could have been ready and able at an earlier time to execute a missed approach" and finding that the information "would have signaled to the pilot that a missed approach might have to be executed" and that the government's failure to inform the aircraft of these conditions was a proximate and concurrent cause of the accident); McCullough v. United States, 538 F. Supp. 694, 699-700 (E.D.N.Y. 1982) (granting plaintiff's motion for partial summary judgment striking the affirmative defenses of contributory negligence and failure to establish proximate cause where crew did not have complete information regarding thunderstorm activity and windshear and finding that had the crew had such information, it "might have been able to make a more accurate assessment of the seriousness of the situation and acted accordingly").

Accordingly, because a triable issue exists as to causation, Midwest's motion for summary judgment is DENIED.

---

has not been shown here.

## VI.        Conclusion

For the foregoing reasons, Lockheed's motion for summary judgment is GRANTED and

Midwest's motion for summary judgment is DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge